WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Craig A. Cameron; Jennifer A. Cameron, <br><br> Plaintiffs, <br><br> v. <br><br> Wells Fargo Bank NA; US Bank; Unknown Parties, <br><br> Defendants. | No. CV-13-01921-PHX-GMS <br><br> **ORDER** |

Pending before the Court is Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss. (Doc. 21.) For the following reasons, the Motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs Craig and Jennifer Cameron are a husband and wife who obtained a loan from Oracle Home Mortgage in August 2005 in the amount of $228,000 on their home in Gold Canyon, Arizona. (Doc. 21-2.) From 2008 to the present, the Camerons have made numerous attempts to modify or refinance their mortgage including by filing for bankruptcy. The Camerons continued to make timely monthly payments based on a modified amount between 2008 and 2012.

The Deed of Trust names Mortgage Electronic Registration Systems, Inc. ("MERS") as the "beneficiary under this Security Instrument." (*Id.* at ¶¶ E, 22.) MERS assigned its interest to Wells Fargo. (Doc. 21-4.) Wells Fargo appointed trustees in 2010 and 2013 that scheduled trustee sales but did not hold them. (Docs. 21-4 to 21-8.)

On August 15, 2013, the Camerons initiated an action in Arizona Superior Court, which Wells Fargo removed to this Court. (Docs. 1-1, 1.) The Camerons later amended their Complaint (Doc. 10), then corrected that Amended Complaint (Doc. 13), and finally submitted a Second Corrected Amended Complaint ("SAC") (Doc. 18). As required under this Court's previous orders (Docs. 4, 8), the parties have conferred but were unable to determine whether any additional amendments to that SAC would cure these alleged deficiencies. Wells Fargo filed the instant Motion to Dismiss on November 21, 2013. (Doc. 21.)

**DISCUSSION**

**I.  Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations; . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When analyzing a complaint for the failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of

truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Federal Rule of Civil Procedure 9(b) requires more specificity for allegations of fraud, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted). In addition to time, place, and content allegations, the plaintiff also must explain what is false or misleading about the statements or omissions. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation, quotations omitted).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

**II.   Application**

    **A.   Arizona's Consumer Fraud Act Claims (Counts One and Two)**

The Arizona CFA grants an implied private right of action against persons who violate its provisions. *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 342, 666 P.2d 83, 87 (Ct. App. 1983). To prevail on a CFA claim in Arizona, the plaintiff must show "(1) a false promise or misrepresentation made in connection with sale or

advertisement of merchandise, and (2) consequent and proximate injury." *Stratton v. Am. Med. Sec., Inc.*, No. CV-07-1491-PHX-SMM, 2008 WL 2039313 at *7 (D. Ariz. May 12, 2008) (citing *Kuehn v. Stanley*, 208 Ariz. 124, 129, 91 P.3d 346, 351 (Ct. App. 2004)). Because claims brought under the CFA involve allegations of fraud, they must be pled with particularity. *Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011).

As a general matter, Wells Fargo asks that most of the allegations be dismissed based on the statute of limitations. The Camerons respond that the statute was tolled because Arizona uses the discovery rule to determine the start date for the statute of limitations. Whether a claim is time-barred is "not generally amenable to resolution on a Rule 12(b)(6) motion" because the Court cannot consider materials outside the pleadings and the applicability of the equitable tolling doctrine often depends on matters outside the pleadings. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993). Under Arizona's discovery rule, a "plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 898 P.2d 964, 966 (1995). Accordingly, the allegations in these counts, and in the other counts discussed below, are not dismissed based on the statute of limitations at this stage in the litigation.

Wells Fargo also contends that dismissal of Counts One and Two is appropriate under Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It argues that the Camerons have failed to comply with Rule 8(a) because they do not specify which statements in the body of the SAC form the basis of their CFA claims. (Doc. 14 at 6.) It cites cases that have dismissed complaints that had "the factual elements of a cause of action present but scattered throughout the complaint and not organized into a 'short and plain statement of the claim.'" *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988); *Daghlan v. TBI Mortg. Co.*, No. CV-12-01415-PHX-NVW, 2013 WL 179452 at *3 (D. Ariz. Jan. 17,

2013).

Here, the Camerons set out numerous statements made by Wells Fargo representatives and allege that they were false or misleading. The counts in the SAC asserting CFA violations incorporate those allegations. In addition, they assert that they were damaged by those acts because they made payments on their mortgage and spent money on applications for modifications and refinancing in reliance on those misrepresentations. The Court does not find their allegations so scattered and disorganized as to warrant dismissal under Rule 8(a).

Wells Fargo further asserts that the Camerons fail to allege fraud with the requisite particularity under Rule 9(b). Here, the Camerons general allegation is that Wells Fargo has made a series of false promises or misrepresentations in connection with the Camerons' attempts to modify or refinance their mortgage. Some of these allegations state a claim with sufficient particularity while others do not.

Under the first requirement of the CFA, the Camerons allege with sufficient particularity that Wells Fargo made false promises or misrepresentations. In 2008, the Camerons arranged for modified payments and later did not discharge the loan in their bankruptcy based on assurance that they would be offered a loan modification consistent with the Home Affordable Modification Program ("HAMP"). (SAC ¶¶ 9–11.) From mid-2009 through early 2010, they attempted to obtain a modification and Wells Fargo made promises that it did not keep about how soon a modification would occur. (SAC ¶¶ 12–20, 27–29.) During this time the Camerons received contradictory communications about what options were available to them and the status of their loan. (*Id.*) This was because while some representatives from Wells Fargo were processing the modification request and requesting information for it, others were moving forward with the foreclosure. Wells Fargo also misrepresented the way that the payments were being applied. (SAC ¶¶ 33–35.) It later corrected the payments and promised the Camerons that they were current and up to date and yet the foreclosure was still proceeding. (*Id.*) In 2011, Wells Fargo cancelled the Camerons approved refinance loan based on a false claim that they had

already received a modification. (SAC ¶ 30.) All of these allegations are stated with sufficient particularity because they include details such as the content of the misrepresentation, the date it was made, the medium in which it was made, and often the person who made it. The Camerons make it sufficiently clear why these statements were false or misleading.

The second requirement of injury is also sufficiently pled. The Camerons relied on the misrepresentations to their detriment by not discharging their obligation under the loan in bankruptcy, and by continuing to pay modified payments from 2008 to 2012. They further allege damage to their credit rating.

The Camerons make other allegations that do not sufficiently state a claim under the CFA. For example, the allegations in paragraphs 21 through 26 do not state a claim because they refer to a dismissed defendant and do not relate to Wells Fargo. In their SAC, the Camerons do not specifically identify which allegations relate to Claims One and Two, only that the "deceptive acts and practices described above were in violation of" the CFA. To the extent that the Camerons were intending to include the following allegations in Claims One or Two, these claims are dismissed for failing to state a claim.

The Camerons do not state a claim under the CFA by alleging that they were unable to obtain a third party refinance loan in 2013. (SAC ¶¶ 31, 36–38.) The allegation is that another company would not approve a loan because Wells Fargo had illegally recorded two deeds of trust when there should only have been one. Assuming that is true, the Camerons have not alleged with particularity any false statement or misrepresentation by Wells Fargo, only that it should not have recorded a second deed of trust.

They also do not state a claim based on the refinance loan that Wells Fargo offered in July, 2013. (SAC ¶¶ 39–44.) The Camerons are unhappy with the terms and feel that Wells Fargo was pressuring them to accept it, but they do not identify with particularity any false or misleading statements made in connection with the refinance offer. To the extent that this offer shows how much interest and fees the Camerons accrued over the years, it is perhaps relevant to showing how much they may have been damaged.

1  Nevertheless, it does not state an independent claim under the CFA.

2  The allegations about violations of a Consent Judgment in another case do not
3  state a claim under the CFA. (SAC ¶¶ 32, 45–52.) The fact that the Consent Judgment
4  does not "limit the availability of remedial compensation to harmed borrowers" does not
5  mean that it affirmatively provides any compensation or cause of action. As explained
6  below, the Consent Judgment does not provide an independent cause of action for the
7  Camerons. However, the Camerons allege that Wells Fargo made "repeated commercial
8  communication by advertisement, press release, online media, and otherwise" that
9  promised compliance with the Consent Judgment. (SAC ¶¶ 7–8, 58.)

10  The Camerons might have a CFA claim if Wells Fargo made misrepresentations
11  that it was following the Consent Order. But the Camerons fail to allege such a claim
12  with sufficient particularity under Rule 9(b). It is not enough to make generals allegations
13  that Wells Fargo repeatedly promised to comply with the Consent Judgment. The
14  Camerons have not identified or given specific examples of any such communications or
15  the actual promises made in them. They have not alleged any specific violation of the
16  Consent Judgment that would make it clear what was misleading at the time about these
17  unspecified commercial communications.

18  Finally, the Camerons argue in their reply that Wells Fargo conceded the existence
19  of a cause of action under CFA based on violations of the Making Homes Affordable
20  program ("MHA") and HAMP. The Camerons never mention MHA in their SAC and the
21  only question is whether they make allegations that state a claim under the CFA. The
22  SAC mentions HAMP three times in paragraph 10. The first two times are legal
23  conclusions about what Wells Fargo was required to do or failed to do with respect to
24  HAMP. The reference to HAMP in paragraph 31 also provides only a legal conclusion
25  about what HAMP requires. Those conclusory allegations of law provide no facts and are
26  not presumed to be true. There are only two factual allegations related to HAMP. The last
27  reference in paragraph 10 states that Wells Fargo knew the modification it offered was
28  not HAMP compliant. Paragraph 11 alleges that Wells Fargo promised to provide HAMP

1 compliant loss mitigation in the future.

2 Therefore, the only allegations related to HAMP are that Wells Fargo knew the first modification was not HAMP compliant and promised to offer HAMP compliant relief in the future. The Camerons cite *Corvello v. Wells Fargo Bank, NA* for the proposition that they have a claim under CFA based on violations of HAMP. 728 F.3d 878 (9th Cir. 2013), *as amended on reh'g in part* (Sept. 23, 2013). That case held that a bank is required to offer a permanent modification or rejection after a plaintiff has successfully completed a trial period plan. *Id.* at 880. This case is distinguishable from *Corvello* because no such plan is alleged and neither is the full compliance with one.

Counts One and Two, alleging claims under the CFA, are not dismissed entirely but are limited as described above.

### B.    Breach of Contract (Count Three)

Under Arizona law, a breach of contract claim contains three elements: "an agreement, the right to seek relief, and breach by a defendant." *Narramore v. HSBC Bank USA, N.A.,* No. 09-CV-635-TUC-CKJ, 2010 WL 2732815 at *4 (D. Ariz. July 7, 2010). A plaintiff must also allege that it was damaged as a result of the breach. *Id.* Wells Fargo asserts that the Camerons claim should be dismissed because it fails to allege any agreement with specificity and because oral agreements are barred by the statue of frauds.

Count Three references promises contained in "documents developed by the parties in the origination of the loan and mortgage" but it does not specify what those documents are. The Camerons have alleged only the first element of this claim in conclusory language. They have not provided any detail about that agreement that would show that they have a right to relief or that Wells Fargo breached. The SAC does not allege enough factual material about the contracts or how they were breached and therefore the Camerons have failed to state any claim in relation to them.

The Camerons' references to *Corvello* are unavailing because that case is distinguishable as noted above. Their arguments from their Response recasting the loan modification as a novation are not contained in the SAC and will not be addressed. They

have failed to state a claim for breach of contract and Count Three is dismissed.

### C. Ariz. Rev. Stat. Title 33 Chapter 6.1 (Count Four)

Chapter 6.1 of Title 33 of the Arizona Revised Statutes contains twenty-three sections relating to Deeds of Trust. These sections cover everything from appointing successor trustees to the disposition of proceeds from a trustee's sale. *See* A.R.S. § 33-801 *et seq.* The Camerons do not specify which section of Chapter 6.1 Wells Fargo violated. Their Response also does not identify any specific statutes or facts. (Doc. 29.) It merely emphasizes that Arizona Courts require "strict compliance" and "substantive fairness" in regard to these statutes generally. (*Id.*) As such, there can be no claim, as the Court cannot discern whether the Camerons have adequately pled the elements of the cause of action when they do not specify which cause of action they bring. Thus, the Camerons have failed to set forth factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. They have failed to state a claim under Title 33, Chapter 6.1 of the Arizona Revised Statutes, and Count Four of their SAC is dismissed.

### D. Tortious Negligent Misrepresentation (Count Five)

Arizona recognizes the tort of negligent misrepresentation as set out in the Restatement (Second) of Torts. *McAlister v. Citibank (Ariz.), a Subsidiary of Citicorp*, 171 Ariz. 207, 215, 829 P.2d 1253, 1261 (Ct. App. 1992). Negligent misrepresentation is defined as supplying "false information for the guidance of others in their business transactions" in the course of the tortfeasor's business, profession, employment, or any other transaction in which he has a pecuniary interest. *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 312, 742 P.2d 808, 813 (1987). Recovery is limited to the persons or limited group of persons "for whose benefit and guidance [the tortfeasor] intends to supply the information." *Id.* Liability is limited in scope "because it is premised on the reasonable expectations of a foreseeable user of information supplied in connection with commercial transactions." *Id.* at 312–13, 742 P.2d at 813–14.

Here, the misrepresentations already discussed were offered by Wells Fargo in the

course of its business for the benefit and guidance of the Camerons as they sought a loan modification. Wells Fargo raises the same arguments for dismissal that it raised in reference to Counts One and Two. It argues that the claims: are not plainly stated under Rule 8(a), are not stated with particularity under Rule 9(b), do not allege reliance or damage, and are barred by the statute of limitations. For the reasons described above, Count Five is not entirely dismissed but is limited as identified above in reference to the CFA claims.

### E.     Tortious Fraudulent Concealment (Count Six)

Arizona recognizes the tort of fraudulent concealment as set out in the Restatement (Second) of Torts. *Wells Fargo Bank v. Ariz. Laborers Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 496, 38 P.3d 12, 34 (2002). The tort is defined as concealing or by other action intentionally preventing a party to a transaction from acquiring material information. *Id.*

Though the Camerons describe a number of allegedly false statements throughout the SAC, they do not allege that Wells Fargo intentionally concealed any material fact from them. The Camerons' Response argues that Wells Fargo had a duty to communicate based on HAMP and the Consent Decree. (Doc. 29 at 12.) The lack of a duty was not raised as a reason to dismiss and the existence of a duty is not sufficient to state a claim. The tort of fraudulent concealment contains several elements, including concealment of a material fact. The Camerons' SAC does not allege that Wells Fargo intentionally concealed any information, or that any such information was material. Thus, their fraudulent concealment claim is dismissed.

### F.     Tortious Failure to Hire, Train or Supervise Employee (Count Seven)

In Arizona, the "failure to hire" tort has only been discussed in the context of job applicants bringing suits against prospective employers, and Arizona courts have specified that the Arizona Civil Rights Act does not create common law action for wrongful failure to hire. *Burris v. City of Phoenix*, 179 Ariz. 35, 43, 875 P.2d 1340, 1348 (Ct. App. 1993). The Camerons do not cite to any case law that supports a failure to hire

claim on the facts of this case. Because a wrongful failure to hire claim does not apply to this context, The Camerons' claim on that theory is dismissed.

"For an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort." *Kuehn*, 208 Ariz. at 130, 91 P.3d at 352. The Camerons do not identify in their SAC or in their Response which employee is alleged to have committed what tort. Thus, they have failed to allege with sufficient specificity which Wells Fargo employee committed a tort, much less what tort it was, or how Wells Fargo was negligent in hiring, training, or supervising the unidentified employee. As such, their claim that Wells Fargo failed to properly hire, train, or supervise employees fails. Count Seven is dismissed in its entirety.

### G.  Consent Judgment (Count Eight)

The Camerons attached three documents to their original Complaint: a copy of the Consent Judgment entered into by Wells Fargo, the United States, the fifty states, and the District of Columbia (Doc. 1-1 Ex. A); a Settlement Term Sheet (*Id.* Ex. B); and Enforcement Terms (*Id.* Ex. C). The Settlement Term Sheet and the Enforcement Terms were created as exhibits to the Consent Judgment, and the Consent Judgment incorporates them into its terms. (*Id.* Ex. A ¶¶ 2, 6.) The Court will consider these external documents on the Motion to Dismiss without converting it into a motion for summary judgment because they were attached to the original Complaint and also because they were incorporated by reference, or quoted and relied on by the SAC. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The Camerons allege that they are entitled to damages because of Wells Fargo's violation of the Consent Judgment. However, the Consent Judgment expressly limits enforcement of its terms to the parties to it and provides that suit may only be brought in the U.S. District Court for the District of Columbia. (*Id.* Ex. C at E-14, ¶¶ J-1, J-2.) The Camerons are not a party to the Consent Judgment, and this Court does not have jurisdiction to enforce it. As such, Wells Fargo's Motion to Dismiss is granted for Count Eight of the SAC.

**H. Equitable Estoppel and Promissory Estoppel (Counts Nine and Ten)**

Arizona defines equitable estoppel as "an affirmative misrepresentation of a present fact or state of facts and detrimental reliance by another thereon." *Tiffany Inc. v. W. M. K. Transit Mix, Inc.*, 16 Ariz. App. 415, 419, 493 P.2d 1220, 1224 (1972). In Arizona, equitable estoppel "is available only as a defense, while promissory estoppel can be used as a cause of action for damages." *Id.* However, Arizona courts have allowed claims based on equitable estoppel to continue as promissory estoppel claims if the plaintiffs adequately alleged the elements of promissory estoppel. *Gorman v. Pima Cnty.*, 230 Ariz. 506, 287 P.3d 800, 804 n.4 (Ct. App. 2012). "The critical distinction between the two is that equitable estoppel refers to reliance on a misrepresentation of some present or past fact, whereas 'promissory estoppel rests upon a promise to do something in the future.'" *Id.* (quoting *Trollope v. Koerner*, 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970)). Otherwise, "promissory estoppel includes all elements of equitable estoppel." *Id.*

Here, the Camerons plead both equitable and promissory estoppel. Under *Gorman*, the Camerons' equitable estoppel claim only exists as an affirmative cause of action to the extent that their promissory estoppel theory survives. The question is whether the Camerons have adequately alleged the elements of promissory estoppel.[1] Estoppel as a cause of action contains three elements: "(1) the party to be estopped commits acts inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury to the latter resulting from the former's repudiation of its prior conduct." *Id.* at 511, 287 P.3d at 805.

Here, the Camerons allege reliance and injury based on Wells Fargo's inconsistent promises and acts as alleged in the SAC. They also allege reliance and injury based on Wells Fargo's promises to comply with the Consent Order.

---

[1] In their Response, the Camerons indicate that they may wish to use equitable estoppel to seek injunctive relief in protecting from a wrongful foreclosure by Wells Fargo. (Doc. 29 at 14.) There is no reason for this Court to allow equitable estoppel to continue as an offensive count in the SAC when the Camerons concede that it will only be relevant as a defense if and when Wells Fargo pursues foreclosure through this action.

- 12 -

1     The Camerons relied on promises that they would be offered a HAMP compliant loan. They also relied on promises about how long their approval would take, the certainty of success, and the options available to them to avoid foreclosure. As discussed above, the Camerons did allege certain commercial communications by Wells Fargo promising compliance with the Consent Order. Although those allegations were not sufficiently pled to satisfy the requirements for claims based on fraud, they are sufficiently plain to state a claim for promissory estoppel. For the reasons discussed above, the Camerons have adequately pled reliance and injury based on these promises and actions. Counts Nine and Ten are not dismissed although, as noted, the Equitable Estoppel claim is actually just a duplicate of the Promissory Estoppel claim.

### I.     Duty of Good Faith and Fair Dealing (Count Eleven)

The duty of good faith and fair dealing is implied in every contract. *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986). That duty prohibits either party from acting "to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.* "[B]ecause a party may be injured when the other party to a contract manipulates bargaining power to its own advantage, a party may nevertheless breach its duty of good faith without actually breaching an express covenant in the contract." *Ariz. Laborers Local No. 395*, 201 Ariz. at 491, 38 P.3d at 29.

Here, the Camerons have failed to identify any benefit under the Deed of Trust or other contract that was impaired by Wells Fargo. The Camerons generally allege that Wells Fargo made false statements to them regarding the status of their loan modification application. They have not identified anything in the Deed of Trust or other contract that guarantees them the right to receive truthful information about the loan modification process. Thus, the Camerons have failed to state a claim that Wells Fargo breached the duty of good faith and fair dealing. Their reliance on *Corvello* is again misplaced. Count Eleven is dismissed for failing to adequately state a claim.

### J.     Common Law Fraud (Count Twelve)

The elements for common law fraud are: (1) A representation; (2) its falsity; (3) its

materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury. *See, e.g.*, *Nielson v. Flashberg*, 101 Ariz. 335, 338–39, 419 P.2d 514, 517–18 (1966) (internal quotations and citations omitted).

The parties have not argued that the common law fraud requirements differ in a significant way from the claims under the CFA. The elements for common law fraud are similar and Wells Fargo has not argued a different basis for the common law fraud claims to be dismissed. Although it is limited to the same specific claims that the CFA claims were, the Common Law Fraud count is not dismissed.

**IT IS HEREBY ORDERED** that Wells Fargo Bank, N.A.'s Motion to Dismiss (Doc. 21) is **GRANTED IN PART AND DENIED IN PART.** It is **GRANTED** as to Counts 3, 4, 6, 7, 8, and 11 of the Corrected Amended Complaint. It is **DENIED** as to Counts 1, 2, 5, 9, 10, and 12, although those claims are limited as described herein.

**IT IS FURTHER ORDERED** directing Plaintiff to show cause as to why Defendant U.S. Bank National Association should not be terminated from this action, **within seven (7) days** of the date of this Order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate Defendant U.S. Bank National Association should Plaintiff not comply within the time stated and without further notice of the Court.

Dated this 14th day of July, 2014.

/s/ A. Murray Snow
G. Murray Snow
United States District Judge